IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:19-CV-140-FL

| | | |
|---|---|---|
| CARLOS A. ALFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CARLOS DEL TORO, Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 68). The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is granted.

**STATEMENT OF THE CASE**

Plaintiff commenced this action, pro se, by filing a motion for leave to proceed in forma pauperis, on July 31, 2019, and the operative amended complaint on July 23, 2020, asserting a claim for judicial review of an unfavorable decision by of the Board of Correction of Naval Records ("Board"). On February 11, 2021, the court, upon defendant's motion to dismiss, construed plaintiff's claim as one for judicial review of a July 10, 2020, decision by the Board, pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, and 10 U.S.C. § 1552, and the court dismissed other claims suggested by the complaint for lack of subject matter jurisdiction and for failure to state a claim. (Feb. 11, 2021, Order (DE 43) at 4-9).

Defendant filed the administrative record and thereafter filed the instant motion relying upon the materials in the administrative record and a statement of material facts. Plaintiff responded in opposition, relying upon: 1) news articles and reports pertaining to veterans' claims; 2) excerpts of policies and procedures regarding inspections, separation for misconduct; 3) excerpts of medical records and Social Security Administration records; 4) exhibits from prior cases;[1] and 5) Department of Defense memoranda by Robert L. Wilke, Under Secretary of Defense for Personnel and Readiness, dated July 25, 2018 ("Wilke memorandum"), and by A.M. Kurta, Acting Under Secretary of Defense for Personnel and Readiness, dated August 25, 2017 ("Kurta memorandum").

## STATEMENT OF UNDISPUTED FACTS

"Plaintiff enlisted in the United States Marine Corps and started a period of active duty on May 29, 1981." (Def's Stmt. (DE 69) ¶1).[2] "On November 18, 1983, Plaintiff was arrested by civil authorities for Driving While Intoxicated ("DWI")." (Id. ¶ 2). "The command assigned him to the Drug and Alcohol Abuse Administration and Management Program and counseled Plaintiff

---

[1] Plaintiff has litigated a number of other cases in this district, some, but not all, related to his military service and records: 7:09-CV-56-BO (closed July 23, 2010); 7:11-CV-4-BO (closed March 29, 2011); 7:11-CV-38-BR (related to military service and records, closed February 21, 2012); 7:11-CV-81-D (closed May 29, 2012); 7:12-CV-257-FL (closed October 23, 2012); 7:12-CV-273-BR (closed March 14, 2013); 7:12-CV-294-F (closed June 11, 2013); 7:13-CV-15-D (related to military service and records, closed January 10, 2014); 7:13-CV-112-D (closed August 14, 2013); 7:14-CV-195-D (related to military service and records, closed June 23, 2015); 7:16-CV-3-BO (closed January 12, 2016); 7:16-CV-8-D (closed September 20, 2016); 7:19-CV-186-FL (commenced September 23, 2019, allowed to proceed with Rehabilitation Act claim against Secretary of Veterans Affairs, closed December 13, 2021); 7:20-CV-31-D (commenced February 20, 2020, allowed to proceed with an employment termination claim, closed March 18, 2021).

Plaintiff also has litigated a number of cases in the United States Court of Federal Claims and United States Court of Appeals for the Federal Circuit, related to military service and records: Alford v. United States, 135 Fed.Cl. 101 (2011); Alford v. United States, 416 Fed.Appx. 901 (Fed. Cir. 2011); Alford v. United States, 123 Fed.Cl. 62 (2015); Alford v. United States, No. 15-1583C, 2016 WL 1085108 (Fed. Cl. Mar. 18, 2016); Alford v. United States, 127 Fed.Cl. 345 (2016); Alford v. United States, 132 Fed.Cl. 334 (2017); Alford v. United States, 137 Fed. Cl. 487 (2018).

[2] Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in defendant's statement of facts where not "specifically controverted by a correspondingly numbered paragraph in [an] opposing statement."

that any subsequent involvement in substance abuse incidents would result in judicial proceedings or administrative separation." (Id. ¶ 3). "On November 28, 1983, he was found guilty in civilian court of the DWI charge." (Id. ¶ 4). "In March 1984, a retention warning counseling documented Plaintiff's limiting physical conditions of somnambulism (sleepwalking) and enuresis (bedwetting)." (Id. ¶ 5).

"By July 29, 1984, Plaintiff had received three nonjudicial punishments for various infractions including absence from his appointed place of duty, wrongful use of a controlled substance (marijuana), and disobedience of a lawful written order (having alcohol beverage in the barracks)." (Id. ¶ 6). "He chose to waive his right to an administrative separation board and was separated with an Other Than Honorable ("OTH") discharge on July 29, 1984 and a reentry (RE) code of RE-4." (Id. ¶ 7).

"Following his 1984 discharge, Plaintiff sought re-enlistment in the Marine Corps." (Id. ¶ 8). "During the re-enlistment process Plaintiff did not disclose his previous service in the Marine Corps and stated on a security questionnaire that he did not have any prior military service." (Id. ¶ 9). "Plaintiff began a second period of active duty on May 29, 1985." "On December 18, 1985, Plaintiff received a NJP for a period of unauthorized absence ("UA") from December 15, 1985 to December 16, 1985." (Id. ¶ 11). "In June 1986, Plaintiff received a psychological evaluation and was diagnosed with passive aggressive personality disorder and possible sleepwalking." (Id. ¶ 12).

"On June 30, 1987, Plaintiff was convicted at special court martial ("SPCM") proceedings for two periods of UA (from December 20, 1985 to April 8, 1986, and from July 2, 1986 to February 3, 1987, for a total of 327 days)." (Id. ¶ 13). "The military court sentenced Plaintiff to confinement for 45 days, forfeiture of $900 pay, reduction in rank, and a bad conduct discharge."

(Id. ¶ 14). "On June 28, 1988, Plaintiff was discharged from the Marine Corps" with a bad conduct discharge. (Id. ¶ 15).

Following his bad conduct discharge, plaintiff petitioned on numerous occasions for correction of his military records, which petitions have been denied. (Id. ¶¶ 16-35, 40-70). He also petitioned for and obtained benefits from the Department of Veterans Affairs ("VA"). (Id. ¶¶ 36-39) Specifically, "[i]n 2016, the [VA] granted [plaintiff] "[s]ervice connection for schizophrenia, paranoid type (also claimed as posttraumatic stress disorder (PTSD), depression, personality disorder, sleeping disorder) with an evaluation of 0 percent effective January 15, 1994 [and] [a]n evaluation of 100 percent . . . effective August 23, 1996." (Id. ¶ 36). "The VA determined that [plaintiff's] paranoid schizophrenia 'existed prior to military service,' but was 'permanently worsened as a result of service.'" (Id. ¶ 37).

In his latest application to the Board, dated July 26, 2019, plaintiff sought a discharge upgrade to honorable, rank upgrade to any he might have attained if not separated, and a full military disability retirement. (Id. ¶ 71; AR 20) (hereinafter, plaintiff's "application"). Plaintiff presented the following questions to the Board, referencing a prior Board decision[3] and prior court proceedings:

> (1) Is denying an indigent Appellant the right to use Pacer a violation of his due process rights[?]. . . .
>
> (2) Did the [Board] violate [plaintiff's] constitutional right of due process when they punished [plaintiff] for a False Positive Urinalysis[?]
>
> (3) [Were plaintiff's] constitutional rights violated when the Judge used an incomplete Navy Advisory Report furnished by the Navy Board of Corrections[?]

---

[3] In his application, plaintiff referenced a January 1, 2010, decision of the Board as the basis for a "request for reconsideration"; however, the latest previous decision by the Board concerning an application by plaintiff is dated November 28, 2017. (AR 20, 2025-2027).

4

(4) Did the [Board] violate the Goldwater Act when using an incomplete history of [plaintiff's] mental illness[?]

(5) [Were plaintiff's] constitutional rights violated when he was sent to talk to an attorney and he was unable to form an attorney-client privilege[?]

(6) [Were plaintiff's] constitutional rights violated when he was made to take a urinalysis that wasn't ready to be used for punishment[?]

(AR 21). Plaintiff then included a summary of his reasons for correction of military records and a narrative description of his family and military history. (AR 21-23).

In considering plaintiff's application, the Board obtained an advisory opinion by Robert A. Alonso, M.D., ("Alonso") dated March 25, 2020. (AR 15-17). The Board also prepared a summary of plaintiff's contentions, a chronology of relevant events, and a summary of authorities. (AR 9-14). In a written decision dated July 10, 2020, the Board denied plaintiff's application, reasoning in conclusion that plaintiff was "properly discharged on the basis of misconduct for both periods of service, and that a medical discharge or disability retirement is not warranted for either period of [his] active duty service." (AR 8) (hereinafter, the "Board's decision").

## COURT'S DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of judicial review under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

"[T]he arbitrary and capricious standard provides only for limited review." Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995).[4] "A reviewing court must consider

---

[4]     In all case citations in this order, internal quotation marks and citations are omitted unless otherwise specified.

whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id. "The court is not empowered to substitute its judgment for that of the agency." Id. "It is the court's task to review the considerations on which the agency relied, and to check that the agency's decision has some basis in the record." Id.

"Judicial review of administrative action is generally confined to the administrative record." Id. "[I]n reviewing agency action under the APA, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Id. "Although the scope of review is narrow, the agency must nevertheless explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." Ohio River Valley Env't Coal., Inc. v. Kempthorne, 473 F.3d 94, 102–03 (4th Cir. 2006). "[T]he Secretary [must] articulate a rational connection between the evidence and his exercise of discretion." Fort Sumter Tours, 66 F.3d at 1335.

Judicial review in the context of a Board decision, under 10 U.S.C. § 1552, is further circumscribed. That statute gives the Secretary of a military department discretion to "correct any military record . . . when the Secretary of the Navy acting through the Board considers it necessary to correct an error or remove an injustice." Chappell v. Wallace, 462 U.S. 296, 303 (1983) (quoting 10 U.S.C. § 1552(a)) (emphasis added). "The district court's review of the [Board's] decision is quite limited." Randall v. United States, 95 F.3d 339, 348 (4th Cir. 1996). "The function of the court is not to reweigh the evidence presented to the [Board]." Id. "Rather, the court is charged with determining whether the conclusion being reviewed is supported by substantial evidence." Id.

B.  Analysis

In moving for summary judgment, defendant contends that the Board's decision provides a thorough explanation and is supported by substantial evidence. The court agrees. In its eight page opinion, the Board addresses each of the questions presented by plaintiff in his application, reviews pertinent evidence in the administrative record, and articulates its reasons for determining that plaintiff was "properly discharged on the basis of misconduct." (AR 1-8). The opinion is supported by a chronology of relevant events spanning nearly 40 years, an advisory opinion by a physician, and an administrative record over 3000 pages. (AR 4, 10-14, 15-17). Thus, the Board has provided "a rational connection between the evidence and [its] exercise of discretion," Fort Sumter Tours, 66 F.3d at 1335, and "the conclusion being reviewed is supported by substantial evidence." Randall, 95 F.3d at 348.

In response to defendant's motion, plaintiff has not identified any particular aspect of the Board's decision that is in error, that lacks sufficient explanation, or that is not supported by substantial evidence. In this respect, plaintiff has not met his burden both upon summary judgment and upon a petition for judicial review, to "come forward with specific facts showing that there is a genuine issue" for adjudication, Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986), and to identify "findings, and conclusions [that are] . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Therefore, summary judgment in favor of defendant is required.

Plaintiff nonetheless raises various categories of contentions and information in his briefs that he suggests should merit a correction of his military records. As an initial matter, some of these were not presented in the first instance to the Board in determining whether a correction of his military records is warranted. "[T]he focal point for judicial review should be the

7

administrative record already in existence, not some new record made initially in the reviewing court." Fort Sumter Tours, 66 F.3d at 1335. "The function of the court is not to reweigh the evidence presented to the [Board]," much less evidence and arguments not presented to the Board in plaintiff's application. Randall, 95 F.3d at 348.

For example, plaintiff argues in his brief:

> [Plaintiff] should have his discharges upgraded because of his Good Works. . . . [Plaintiff] has worked tireless[ly] to help people just like him. He is on medication that he takes daily and nightly. He works in the laundry at the Fayetteville North Carolina Veterans Hospital. He is in the compensated work program. He makes $7.00 an hour. He talks to and helps homeless veterans get into school. He helps them into treatment, and he sponsors them in AA/NA groups. [Plaintiff] went back to school and received a Juris Doctorate in Business Law.

(Pl's Mem. (DE 73) at 3-4). The present conduct described by plaintiff in working and contributing meaningfully to his community is commendable, but it does not provide a basis for finding the Board's decision arbitrary and capricious.

Plaintiff also argues in his brief that a search of his belongings, at which an "unopened bottle of alcohol" was discovered, "for which he was given [non-judicial punishment]," was an "illegal search." (Pl's Mem. (DE 75) at 2). Accordingly, he suggests, his first discharge in 1984 was not properly based, in part, on that non-judicial punishment. (See id.). Plaintiff, however, did not raise this issue of the illegality of this search in his application to the Board. (See AR 20-23). Indeed, plaintiff stated in his application, without qualification, that he was "written up for having an unopened bottle of alcohol while waiting for his ride into town." (AR 23). Therefore, plaintiff's argument concerning search illegality is not properly before the court. See Fort Sumter Tours, 66 F.3d at 1335.

In any event, substantial evidence supports reliance by the Board on plaintiff's non-judicial punishment related to alcohol as one component supporting his other than honorable discharge in 1984. In particular, plaintiff was counseled for his conduct and provided an opportunity for a

8

hearing on the merits at the time. (See AR 10, 1828, 1856-1858, 2581, 2586, 2835). Therefore, that part of plaintiff's argument premised upon an illegal search is without merit.

Plaintiff suggests that a 2009 polygraph examination and other evidence undermines a urinalysis that was used as the basis for a non-judicial punishment ("NJP") imposed on May 17, 1983, for using marijuana. He relies upon exhibits filed in prior cases No. 7:11-CV-38-BR and 7:13-CV-15-D, comprising a portion of a polygraph examination and articles regarding drug screening in the military. (See DE 75-1 at 5; DE 75-3; see also AR 2808). Plaintiff's suggestion and reliance on these materials, however, does not undermine the Board's decision. In its opinion, the Board addressed in detail plaintiff's contentions regarding a "False Positive Urinalysis," as follows:

> The Board considered your request for a determination on your allegation that you were punished for a false positive urinalysis. The Board noted that you were found guilty of wrongful use of a controlled substance (marijuana) at NJP held on 17 May 1983. The Board considered your contention and took into account the information and articles you provides regarding flaws in the military's urinalysis program. The Board also weighed your statement that you did not test positive for a controlled substance during regular and routine urinalysis. The Board found, however, that your assertions and the information your provided is insufficient to establish, by a preponderance of evidence, that the urinalysis which led to your NJP was inaccurate or flawed. Accordingly, the Board determined that the NJP for wrongful use of a controlled substance should remain in your record, that your command's reliance in part on that NJP was appropriate with recommending you for an OTH discharge.

(AR 6). Further, it reasoned:

> With respect to your question regarding your constitutional rights being violated when you were made to take a urinalysis that was not ready to be used for punishment, the Board considered your statement that you were subjected to routine urinalysis while you were receiving alcohol abuse treatment, and noted that your NJP for wrongful use of marijuana appears to have been the result of a command-executed urinalysis. The Board found that you did not provide sufficient evidence to support an allegation or a determination, by a preponderance of the evidence, that the DoN wrongfully violated your rights by executing an unlawful urinalysis while you were on active duty in the Marine Corps.

(AR 7). In addition, the Board referenced Dr. Alonso's advisory opinion, which described the polygraph examination, but concluded "there is no evidence presented from his military service that he was not responsible for his actions." (AR 4-5, 16-17). These explanations are sufficient to

9

"offer a rational connection between the facts found and the choice made." Ohio River Valley Env't Coal., Inc., 473 F.3d at 102, and they serve to "articulate a rational connection between the evidence and [the Secretary's] exercise of discretion." Fort Sumter Tours, 66 F.3d at 1335.

In addition, the Board's determinations with respect to plaintiff's arguments concerning urinalysis are supported by substantial evidence. For example, the Board concluded that information provided by plaintiff "is insufficient to establish, by a preponderance of the evidence, that the urinalysis which led to [plaintiff's] NJP was inaccurate or flawed." (AR 6). While plaintiff asserts that he was subjected to a "False Positive Urinalysis," (AR 21), the Board reasonably concluded that plaintiff did not present sufficient evidence to undermine the reliability of his urinalysis. Indeed, there is a lack of any primary, contemporaneous, documents in the record referencing a urinalysis as a basis for the NJP imposed on May 17, 1983, for using marijuana. Rather, the record of punishment provides only that plaintiff received punishment for "wrongful use . . . controlled substance, to wit, marijuana," followed by a statement that he was given the opportunity to consult with a lawyer and chose not to exercise that right. (AR 2828). The record thus does not reflect the nature of any urinalysis conducted, much less that a specific urinalysis underlying plaintiff's NJP was flawed. Given the "presumption of regularity that attaches" to agency actions, Nardea v. Sessions, 876 F.3d 675, 680 (4th Cir. 2017), and the lack of contemporaneous evidence in the record, the Board's conclusion concerning plaintiff's failure to meet the burden of proof is itself supported by substantial evidence.

Notably, the court's role is not to determine in the first instance whether any such urinalysis was reliable, but rather only whether the Board's determination on plaintiff's argument was supported by substantial evidence. See Randall, 95 F.3d at 348. In any event, in addition and in the alternative, the polygraph examination is insufficient to undermine the reliability of the

10

purported urinalysis because it does not itself reference any urinalysis. (See DE 75-1 at 5). It further lacks probative value in light of its late date, and considering that in 2016 an examination of plaintiff indicated "memory problems in the dementia range." (AR 12). Plaintiff's reliance upon articles providing general information about urinalysis in the military, too, is insufficient. Indeed, one article cites an "estimated . . . false-positive rate of three to five percent" in military urinalysis results. (AR 2815). Consistent with the Board's conclusion, such information is not sufficient to establish, by a preponderance of the evidence, that plaintiff's urinalysis was flawed.

Plaintiff challenges other grounds for non-judicial punishment, such as tardiness and a DWI conviction, on the basis that he was "insane when he committed these crimes," and he was "drinking to cover up his [m]ental illness." (Pl's Mem. (DE 75) at 1-2). The Board thoroughly addressed these contentions in its decision, including with reference to the advisory opinion by Dr. Alonso. (See AR 4-8, 17). In particular, the board noted "[c]ommunications from the VA describe [plaintiff] as 'insane' when [he] committed [the] offenses," and that the VA diagnosed PTSD, and that plaintiff provided "medical opinions . . . that [plaintiff's] mental health conditions were exacerbated during [plaintiff's] military service." (AR 4-5). The Board expressly considered this evidence in light of the Wilke and Kurta memoranda. (AR 4). Nevertheless, the Board determined that "it is less likely than not that [plaintiff's] in-service misconduct could be attributed primarily to a mental health condition." (AR 5).

The Board's determination in this respect was supported by the following substantial evidence in the record: 1) the "nature and frequency of [plaintiff's] misconduct" (AR 5; see AR 10, 1856, 2586, 2828); 2) plaintiff's "failure to disclose [his] previous military service during re-enlistment" (AR 5; see AR 10); 3) the fact that "VA's opinion is not dispositive on the Board for purposes of determining culpability for [plaintiff's] misconduct since it is an opinion used

exclusively for determining VA eligibility" (AR 5; see AR 11-13); and 4) the "seriousness, frequency and nature of [plaintiff's] misconduct," coupled with the advisory opinion's "finding that it is less likely than not that [plaintiff's] in-service misconduct could be attributed to a mental health condition." (AR 5-6; see AR 17).

In sum, the Board's decision provides "a rational connection between the evidence and [the Board's] exercise of discretion," Fort Sumter Tours, 66 F.3d at 1335, and "the conclusion being reviewed is supported by substantial evidence." Randall, 95 F.3d at 348. Therefore, the court must uphold the decision of the Board on judicial review, and the court must grant summary judgment in favor of defendant.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 68) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of June, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge